**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| DENYIA CULLUM, sister and next friend of JAMES JAMAL TAYLOR, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 20 C 6914 |
| v. | ) ) | Judge Virginia M. Kendall |
| RYAN WONDRASEK, JAMES ROSS, and MAURICE CARTER, individually and as agents of the COOK COUNTY DEPARTMENT OF CORRECTIONS, | ) ) ) ) ) | |
| *Defendants*. | ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

James Jamal Taylor committed suicide during his detention at the Cook County Department of Corrections (CCDOC). In this action against CCDOC correctional officers Ryan Wondrasek, James Ross, and Maurice Carter, Taylor's sister Denyia Cullum alleges constitutional violations pursuant to 42 U.S.C. § 1983 (Counts I–III); and claims of negligence (Counts IV–VI); wrongful death (Counts VII–IX); and conspiracy (Counts X–XII) under Illinois law. Defendants move to dismiss Cullum's state-law claims for failure to state a claim. (Dkt. 122). Cullum moves for leave to file a fifth amended complaint adding ten additional correctional officers as defendants. (Dkt. 119). Cullum also moves to modify the Court's scheduling order. (Dkt. 162). For the reasons below, Defendants' partial motion to dismiss is granted. Cullum's motions for leave to amend her complaint and to modify the scheduling order are denied.

## BACKGROUND

**A.      Factual Allegations**

Unless otherwise noted, the following factual allegations are taken from Cullum's Fourth Amended Complaint, (Dkt. 114), and are assumed true for purposes of the Defendants' motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). James Jamal Taylor committed suicide by hanging himself on September 29, 2020, during his detention at the CCDOC. (Dkt. 114 ¶¶ 4, 27, 30). Defendants Officer Ryan Wondrasek and Sergeants James Ross and Maurice Carter were responsible for supervising Taylor at the CCDOC. (*Id.* at ¶¶ 5, 12, 14). Defendants had not received suicide-prevention training, and the jail was understaffed during Taylor's detention. (*Id.* at ¶ 21).

Taylor was transferred to the CCDOC from a Chicago Police Department (CPD) holding facility on September 26, 2020. (*Id.* at ¶ 19). His record from the CPD holding facility noted that Taylor had "serious mental problems." (*Id.*) According to the record, Taylor had stated that he had schizophrenia and was not taking his medication. (*Id.* at ¶ 20). When Taylor arrived at CCDOC, Defendants placed him in a holding cell. (*Id.* at ¶ 14). Defendants did not assign Taylor to the jail's "psych tier." (*Id.* at ¶¶ 23, 100, 108, 116). In the days leading up to his death, Taylor displayed erratic behavior, including urinating and defecating on himself. (*Id.* at ¶¶ 15–16). Other detainees reported Taylor's behavior to Defendants, requesting that he receive medical attention. (*Id.* at ¶¶ 18, 26). Defendants did not intervene. (*Id.* at ¶¶ 24, 26, 30). Cullum alleges Defendants failed to monitor Taylor, enforce relevant policies, provide him with medical treatment for his mental illness, or limit his access to the items used to commit suicide. (*Id.* at ¶¶ 120, 124, 128).

B.      **Procedural History**

Taylor's mother, Tiffany Palmer, brought this action against unknown correctional officers on November 22, 2020. (Dkt. 1). She first amended the complaint on January 14, 2021. (Dkt. 6). Palmer filed a Second Amended Complaint on May 7, 2021, naming Defendants Wondrasek, Ross, and Carter. (Dkt. 31). The Third Amended Complaint, filed September 6, 2021, substituted Taylor's sister, Denyia Cullum, as the plaintiff. (Dkt. 45).[1] At the time, Cullum was not the administrator of Taylor's estate. (*See* Dkt. 95).[2]

On April 16, 2021, Defendants produced surveillance videos of the prison from September 27, 2020, including footage of the ten correctional officers. (Dkt. 119 at 2; Dkt. 134 at 4).[3] Cullum asserts her counsel attempted to access the video footage on May 20, 2021. (Dkt. 119 at 2). After encountering technical difficulties, Cullum's counsel "continuously attempted to gain access to the videos until January 25, 2022." (*Id.*) Then, Cullum's counsel emailed Defendants' counsel requesting help to access the files. (*Id.*; Dkt. 119-2 at 15; Dkt. 134 at 5; *see also* Dkt. 45). Defendants' counsel's paralegal sent Cullum's counsel instructions to view the videos on February 16, 2022. (Dkt. 119-4 at 1).[4] Cullum's counsel acknowledged being able to view the videos five days later. (Dkt. 119-4 at 7). Cullum moved to compel additional videos and documents on March 15, 2022, without requesting the names of any correctional officers. (Dkt. 72). In a renewed motion to compel Defendants' production of additional surveillance videos, Cullum stated: "Plaintiff needs to have the Defendant identify . . . six officers" who appeared in the footage. (Dkt. 79 at 4).

---

[1] Due to a past felony conviction, Palmer could not serve as the administrator of Taylor's estate. (Dkt. 45-2).
[2] Cullum moved to become the estate's administrator sixteen months later, on March 10, 2022. (Dkt. 134-8).
[3] Cullum claims she did not receive additional surveillance videos, from September 28 and 29, 2020, but she concedes that the ten correctional officers appeared in the video footage she received on April 16, 2021. (Dkt. 119 at 3).
[4] Defendants claim the instructions were accessible through a Google search. (Dkt. 134 at 5).

On April 22, 2022, the Court[5] stayed discovery because Cullum had not been appointed as the administrator of Taylor's estate. (Dkts. 79, 82). After becoming the estate's administrator, Cullum moved to vacate the stay five months later, on September 23, 2022. (Dkt. 95). On September 28, 2022, Cullum asked Defendants to name the ten correctional officers who appear in the September 27, 2020 video footage. (Dkt. 134 at 6; Dkt. 105 at 5). Defendants produced nine of the ten officers' names on November 15, 2022. (Dkt. 134-9 at 4).

Meanwhile, on September 29, 2022, Cullum moved to file a fourth amended complaint, seeking to add state-law claims and the ten unnamed correctional officers from the video footage. (Dkt. 98). Relevant here, Cullum argued: adding the ten correctional officers would not prejudice Defendants; the claims against the ten officers relate back to her earlier timely complaint; there was good cause to amend past the scheduling-order deadline;[6] and equitable tolling should permit new claims against the officers past the statute of limitations. (Dkt. 98 at 1–3; Dkt. 111). On November 21, 2022, the Court held a hearing on the motion to amend. (Dkts. 113, 130-8). In an oral ruling, the Court allowed Cullum to add state-law claims against Wondrasek, Ross, and Carter, finding the new claims would not cause undue prejudice. (Dkt. 113; Dkt. 130-8 at 6–8).[7] But the Court denied Cullum's motion to add the ten unnamed correctional officers as new defendants, which would have been a "meaningless gesture." (Dkt. 113; Dkt. 130-8 at 5–6). Cullum's claims against the officers could not relate back, the Court explained, because Seventh Circuit precedent does not permit "add[ing] Doe defendants as a placeholder" until the plaintiff learns the defendants' identities. (Dkt. 130-8 at 5–6 (citing Fed. R. Civ. P. 15(c)). Yet, the Court left open

---

[5] The Honorable Gary Feinerman presided over this case from its inception until December 2022.

[6] The deadline for Cullum to amend her complaint was September 6, 2021. (Dkt. 41).

[7] Judge Feinerman "tentatively" indicated that the state-law claims seemed to relate back to the original complaint, before allowing Defendants to "push back." (Dkt. 130-8 at 6–7). After Defendants argued that they had not briefed the relation-back issue, Judge Feinerman allowed the addition of the state-law claims, finding an absence of prejudice. (*Id.* at 7–8). He clarified that his ruling would not preclude Defendants from "seeking to challenge those state law claims on the merits." (*Id.* at 8).

the possibility of equitable tolling: "If and when the plaintiff learns the identity of some or all of the Doe correctional officers, . . . she may file a motion for leave to amend to add those named defendants," and "at least attempt to invoke equitable tolling." (*Id.* at 5–6).

In the Fourth Amended Complaint, Cullum alleges constitutional violations pursuant to 42 U.S.C. § 1983 (Counts I–III); and state-law claims of negligence (Counts IV–VI); wrongful death (Counts VII–IX); and conspiracy (Counts X–XII). (Dkt. 114). On December 13, 2022, Cullum moved for leave to file a fifth amended complaint, trying again to add the ten correctional officers as defendants—this time by name. (Dkt. 119).[8] On December 19, 2022, Defendants moved to dismiss the state-law claims in the Fourth Amended Complaint. (Dkt. 122). On December 28, 2022, this case was reassigned from the Honorable Gary Feinerman. (Dkt. 127). This Court adopted Judge Feinerman's scheduling order, which set March 30, 2023 as the deadline for motions to amend pleadings or add new parties. (Dkts. 100, 137). Cullum moved on March 29, 2023 to amend the scheduling order. (Dkt. 162). Before the Court are Cullum's motions for leave to amend her complaint and to amend the Court's scheduling order and Defendants' motion to dismiss.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown*

---

[8] Cullum seeks to add as defendants Officer Noelle Castillo, Officer Alfred Phillips, Officer Tiffany Washington, Officer Julius Tolbert, Lieutenant Calvin, Officer Herman Green, Sergeant Robert Bray, Sergeant McKinney, Lieutenant Raymond Hemphill, and one Doe officer. (*Id.* at 1–2). Cullum has not attached a proposed fifth amended complaint to her motion. Nor has she specified what claims she intends to bring against the ten additional correctional officers. (*See id.* at 1).

*Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend. Mut. Ins.*, 844 F.3d at 675). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Kaminski*, 23 F.4th at 776 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.     Statute of Limitations on State-Law Claims (Counts IV – XII)

Starting with the motion to dismiss, Defendants argue that Cullum's state-law claims are time-barred. (Dkt. 124 at 3–4). Where the complaint's factual allegations establish a claim's untimeliness, the claim is subject to dismissal. *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019). Illinois's Local Governmental and Governmental Employees Tort Immunity Act sets a one-year statute of limitations on actions "against a local entity or any of its employees." 745 ILCS 10/8-101(a). The Tort Immunity Act applies to Cullum's state-law claims, and the clock started on September 29, 2020, the date of Taylor's death. Cullum first brought these claims on November 28, 2022—more than one year after the statute of limitations expired. Nonetheless, Cullum argues that the state-law claims are not barred because they relate back to the timely Third Amended Complaint under Rule 15(c)(1). (Dkt. 136 at 1–3).[9]

---

[9] Cullum insists that Judge Feinerman already held that her state-law claims relate back. (Dkt. 136 at 3). Yet, Judge Feinerman's ruling did not go so far. (*See* Dkt. 130-8 at 6–8). Before allowing Defendants to argue otherwise, Judge

To relate back to a timely pleading, an amended pleading must "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Supreme Auto Transp., LLC v. Arecelor Mittal USA, Inc.*, 902 F.3d 735, 741 (7th Cir. 2018) (quoting Fed. R. Civ. P. 15(c)(1)(B)); *see also In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 331 (7th Cir. 2009) ("Illinois' relation-back doctrine is, in all material respects, identical to the federal rule."); *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 515 (7th Cir. 2011) ("Under Illinois law as under federal law, an amendment relates back when it arises out of the same transaction or occurrence set up in the original pleading." (quotation omitted)); *Forsythe v. Advoc. Health & Hosps. Corp.*, 2013 WL 427130, at *3 (N.D. Ill. Feb. 1, 2013) ("[T]he Notes of the Advisory Committee on Rules for the 1991 Amendment to Rule 15 state that if the state law which governs the limitations period 'affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim.'"). "The central inquiry under Rule 15(c) is whether original complaint 'gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one.'" *Supreme Auto*, 902 F.3d at 741 (quoting *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006)). "Even 'significant' changes to a complaint . . . can relate back so long as the defendant had fair notice of the substance of the new allegations from the outset." *Id.*

---

Feinerman expressed his tentative understanding that the state-law claims would relate back. (*Id.* at 6–7). After a word from Defendants, Judge Feinerman permitted the addition of the state-law claims because he did not find prejudice under Rule 15(a)(2). (*Id.* at 7–8). He made clear that his ruling would not preclude Defendants from challenging the merits of the state-law claims. (*Id.* at 8). Permission to amend a pleading—the domain of Rules 15(a) and (b)—is distinct from the issue of relation back under Rule 15(c). *See Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 558 (7th Cir. 2011) ("Amending the complaint . . . was entirely proper; whether the amendment would relate back to the date when the original complaint was filed and thus defeat the defense of statute of limitations was a separate question.").

Relation back is therefore "appropriate where a party seeks to add a new theory to a set of previously alleged facts," but not where the amended complaint "states an entirely new and distinct claim for relief based on completely different facts." *PTS Consulting Servs. LLC v. Tcode Inc.*, 2022 WL 4386682, at \*4 (N.D. Ill. Sept. 22, 2022) (quoting *Porter v. Decatur Mem'l Hosp.*, 882 N.E.2d 583, 592 (Ill. 2008)); *see, e.g.*, *Westbrook v. Del. Cnty. Sheriff*, 790 F. App'x 807, 810–11 (7th Cir. 2019) (plaintiff's claims about his treatment in jail concerned a distinct occurrence from his allegedly illegal arrest). There is a "grey area" in which relation back may be appropriate despite new factual allegations that are "within the general 'transaction' alleged in the original complaint." *PTS Consulting*, 2022 WL 4386682 at \*4 (citing *Porter*, 882 N.E.2d at 592). In these instances, according to the Illinois Supreme Court, amended pleadings relate back "where there is a 'sufficiently close relationship' between the original and new claims, both in temporal proximity and in the general character of the sets of factual allegations and where the facts are all part of the events leading up to the originally alleged injury." *Porter*, 882 N.E.2d at 592 (quoting *In re Olympia Brewing Co. Sec. Litig.*, 612 F. Supp. 1370, 1372–73 (N.D. Ill. 1985)).

Here, Cullum's state-law claims arise from the same occurrence as the § 1983 claims in her timely Third Amended Complaint. (*Compare* Dkt. 114, *with* Dkt. 45). Certainly, the Third Amended Complaint's allegations gave Defendants fair notice that this case is about a failure to protect Taylor from himself during his detention at the CCDOC. To the extent Cullum's Fourth Amended Complaint adds new factual allegations, they concern the same three-day window of time leading up to the same injury—Taylor's suicide. Rather than describing a distinct occurrence from the timely pleading, *cf. Westbrook*, 790 F. App'x at 810–11, the new facts merely color the same story. Thus, the new and original claims have a "sufficiently close relationship." *See Porter*, 882 N.E.2d at 592.

8

Defendants argue that the alleged "failure to monitor on September 29th is very different than failing to place a person on a psych tier or failing to provide medical treatment for a mental illness on September 27th upon intake." (Dkt. 144 at 5). But the allegations in the Third Amended Complaint were not limited to the date of Taylor's suicide: they spanned the entirety of Taylor's detention. (*See* Dkt. 45 at ¶¶ 1, 12–15, 21, 26, 29, 54, 77, 100). Contrary to Defendants' assertion, the Third Amended Complaint included allegations that Defendants failed to assign Taylor to the psych tier and failed to provide medical treatment. (*Id.* at ¶¶ 23, 57, 80, 103). True, Cullum alleges for the first time in the Fourth Amended Complaint that Defendants failed to limit Taylor's access to the objects he used to commit suicide and failed to enforce relevant policies. To find that the state-law claims arise from a separate "occurrence" based on these new facts, however, would be splitting hairs. Since Cullum's state-law claims relate back to the timely Third Amended Complaint, dismissal on statute-of-limitations grounds is inappropriate.[10]

## II.     Negligence and Wrongful Death (Counts IV–IX)

As to Counts IV–IX, alleging negligence and wrongful death, Defendants argue that: (1) they are immune under Illinois's Governmental Employees Tort Immunity Act; and (2) Taylor's suicide was an independent intervening act severing causation. (Dkt. 124 at 4–13). The Court addresses each argument in turn.

---

[10] Defendants argue, based on *Herrera v. Cleveland*, 8 F.4th 493, 499 (7th Cir. 2021), *cert. denied* 142 S. Ct. 1414 (2022), that Cullum has not diligently pursued her state-law claims, and no "extraordinary circumstances" prevented her from timely bringing these claims. (Dkt. 124 at 3–4; Dkt. 144 at 4). But diligence and extraordinary circumstances are required to establish equitable tolling of the statute of limitations—a different issue. Cullum need not show her entitlement to equitable tolling if her claims relate back to a timely pleading. *See Herrera*, 8 F.4th at 499. Defendants also argue that Cullum's delay in adding state-law claims will result in undue prejudice. (Dkt. 144 at 3–5). This misses the mark too. In granting leave to amend, Judge Feinerman determined that the addition of the state-law claims would not unduly prejudice Defendants. (*See* Dkt. 113; Dkt. 130-8 at 7–8 ("I can't see any prejudice to the defendants under [Rule] 15(a)(2) . . . .")). As noted, leave to amend and relation back present distinct inquiries. *See Joseph*, 638 F.3d at 558. The Court sees no reason to reconsider whether leave to amend was properly granted.

A.    **Illinois Tort Immunity Act**

Defendants contend that the Tort Immunity Act shields them from liability for: (1) failure to supervise; (2) failure to provide medical care; and (3) failure to recognize and respond to mental illness. (Dkt. 124 at 4–13). Defendants "bear the burden of establishing immunity under the Tort Immunity Act." *Abruzzo v. City of Park Ridge*, 898 N.E. 2d 631, 636 (Ill. 2008) (citing *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 280 (Ill. 2003)).

1.    **Failure to Supervise**

Under § 4-103 of the Tort Immunity Act, a local public employee is not liable "for failure to provide sufficient equipment, personnel, supervision, or facilities" in a jail. 745 ILCS 10/4-103. "Nothing in this section requires periodic inspection of prisoners." *Id.* Section 4-103 provides absolute immunity. *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998) (citing *Jefferson v. Sheahan*, 664 N.E.2d 212, 215–17 (Ill. App. Ct. 1996)); *Schneider v. County of Will*, 528 F. App'x 590, 596 (7th Cir. 2013); *see also Padilla v. Perez*, 2017 WL 345553, at *3 (N.D. Ill. Jan. 24, 2017) (collecting cases and observing that "federal district courts have routinely dismissed state law failure-to-protect claims on grounds of immunity under § 4-103"). As local public employees, Defendants are immune under § 4-103 to the extent Cullum's negligence and wrongful-death claims depend on a failure to supervise Taylor.[11]

2.    **Failure to Provide Medical Care**

Defendants also seek shelter from liability for their alleged failure to provide medical care. Section 4-105 of the Tort Immunity Act immunizes local public employees from liability for failure "to furnish or obtain medical care for a prisoner," unless the employee, "through willful and wanton conduct, fails to take reasonable action to summon medical care." 745 ILCS 10/4-105.

---

[11] Cullum does not respond to this argument and so concedes the point. (*See* Dkt. 136 at 5–6); *Bradley v. Village of Univ. Park*, 59 F.4th 887, 897 (7th Cir. 2023) (failure to raise or respond to an argument waives it).

Public employees may be liable for a failure to provide a prisoner with medical care only if: (1) "[they] knew based on [their] observation that immediate medical care was needed," and (2) "the failure to take reasonable action to provide that medical care was willful and wanton." *Lipsey v. United States*, 879 F.3d 249, 256 (7th Cir. 2018); *see also Jones v. Mathews*, 2 F.4th 607, 615 (7th Cir. 2021) ("[T]he standard for assessing whether conduct is willful and wanton is 'remarkably similar' to the deliberate indifference standard." (quoting *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001))).

Here, Cullum alleges detainees observed and reported Taylor's concerning behavior— which included urinating and defecating on himself—to Defendants. (Dkt. 114 ¶¶ 15–16, 18, 26). Despite the apparent likelihood that Taylor might harm himself, Defendants did not help Taylor get medical care. (*Id.* at ¶¶ 24, 26, 30). At this stage, these allegations are enough to plausibly suggest willful and wanton conduct and defeat immunity under § 4-105. *See, e.g.*, *Padilla*, 2017 WL 345553, at *5 (collecting cases and finding dismissal based on § 4-105 immunity improper where allegations suggested potentially willful and wanton conduct); *see also, e.g.*, *Tyson v. Cook County*, 539 F. Supp. 3d 924, 928 (N.D. Ill. 2021) (finding, since immunity warrants dismissal "only when the factual allegations in the complaint unambiguously establish all the elements of the defense," plaintiff was "entitled to discovery to determine the scope of each defendant's role in the negligent conduct he alleges" (quoting *Harris v. City of Chicago*, 479 F. Supp. 3d 743, 753 (N.D. Ill. 2020))). Accordingly, dismissal under § 4-105 is inappropriate to the extent Cullum's claims assert failure to provide medical treatment.

### 3.     Failure to Diagnose or Confine Based on Mental Illness

Defendants also claim immunity for any failure to diagnose mental illness or failure to confine or admit Taylor to a medical facility. (Dkt. 124 at 11–12). Section 6-105 of the Tort Immunity Act immunizes local public employees for any:

> failure to make a physical or mental examination or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others.

745 ILCS 10/6-105. Similarly, § 6-106 provides local public employees with immunity from liability for "diagnosing or failing to diagnose that a person is afflicted with mental or physical illness." 745 ILCS 10/6-106(a). These sections provide absolute immunity, without any willful-and-wanton exception. *See Abruzzo*, 898 N.E. 2d at 637; *see also Grandalski ex rel. Grandalski v. Lyons Twp. High Sch. Dist. 204*, 711 N.E.2d 372, 380 (Ill. App. Ct. 1999). Section 6-106(d) clarifies, however, that "this section" does not "exonerate[] a public employee" for any "negligent or wrongful act or omission in administering any treatment prescribed for mental or physical illness." 745 ILCS 10/6-106(d).

Local public employees therefore "enjoy immunity from liability based on an employee's negligent 'diagnosis,' not negligent 'treatment.'" *Lash v. Sparta Cmty. Hosp. Dist.*, 38 F.4th 540, 543 (7th Cir. 2022) (citing *Mich. Ave. Nat'l Bank v. County of Cook*, 732 N.E.2d 528, 535–37 (Ill. 2000), and *Johnson v. Bishof*, 33 N.E.3d 624, 640 (Ill. App. Ct. 2015)). If a claim's "'gravamen' . . . concerns an employee's diagnosis," immunity applies. *Id.* (citing *Willis v. Khatkhate*, 869 N.E.2d 222, 229 (Ill. 2007). But if the gravamen concerns "a treatment for a diagnosed injury, then immunity does not attach." *Id.* (citing *Willis*, 869 N.E.2d at 229). In determining the gravamen of a claim, "'diagnosis' and 'treatment' are afforded their plain meanings." *Id.* (citing *Mich. Ave.*, 732 N.E.2d at 538–39). Diagnosis refers to "the 'art or act of

12

identifying a disease from its signs and symptoms,' and as an 'investigation or analysis of the cause or nature of a condition, situation, or problem.'" *Id.* (quoting *Mich. Ave.*, 732 N.E.2d at 538). Treatment describes "the action or manner of treating a patient medically or surgically." *Id.* (quoting *Mich. Ave.*, 732 N.E.2d at 539).

Here, Cullum alleges that Taylor arrived at CCDOC with a record from the CPD holding facility noting that he had "serious mental problems." (Dkt. 114 ¶ 19). Taylor's record also included Taylor's own statement that he had schizophrenia and was not taking his medication. (*Id.* at ¶ 20). In addition, Cullum claims Defendants "failed to provide treatment to [Taylor] for his known mental illness." (*Id.* at ¶¶ 120, 124, 128). These allegations suggest a failure in treatment, rather than diagnosis. *See Lash*, 38 F.4th at 543.

On the other hand, Cullum's Fourth Amended Complaint also include allegations thrusting at a failure to diagnosis Taylor's mental condition—such as that Defendants "failed to bring decedent's condition to the attention of competent mental and medical personnel so that he could be properly diagnosed." (*Id.* at ¶¶ 100, 108, 116). Clearly, Cullum's theory that Defendants failed to diagnose Taylor cannot proceed. Nonetheless, it is not apparent at this stage that the alleged failure in diagnosis is the "gravamen" of Cullum's negligence and wrongful death claims. *See Lash*, 38 F.4th at 543. Defendants have not met their burden in showing that dismissal of Cullum's entire claims is warranted. Accordingly, Defendants are not immune from liability to the extent Cullum's claims depend on a failure-to-treat theory.[12] The ensuing analysis of the sufficiency of Cullum's state-law claims disregards the allegations of conduct for which Defendants are immune.

---

[12] Defendants also invoke §§ 6-107 and 6-109 of the Tort Immunity Act. Section 6-107 gives local public employees immunity for determining "whether to confine a person for mental illness." 745 ILCS 10/6-107(a)(1). And § 6-109 immunizes local public employees for "failure to admit a person to a medical facility operated or maintained by a local public entity." 745 ILCS 10/6-109. There is a dearth of case law on these provisions, and Defendants have done no more than assert, without supporting authority, that they bar Cullum's state-law claims. (Dkt. 124 at 11–12). Replying to Cullum's bare-bones (and inaccurate) response that §§ 6-105, 6-106, 6-107, and 6-109 apply only to hospitals or public entities "performing health activities," (*see* Dkt. 136 at 6), Defendants have supported their

### B.    Independent Intervening Act (Counts IV–IX)

Defendants next argue that Cullum fails to state a claim for negligence or wrongful death due to an intervening act. (Dkt. 124 at 10, 12–13). To state a claim for negligence under Illinois law, "a plaintiff must plead a duty owed by a defendant to that plaintiff, a breach of duty, and injury proximately caused by the breach of duty." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1148 (7th Cir. 2010) (quoting *Bell v. Hutsell*, 931 N.E.2d 299, 302 (Ill. App. Ct. 2010)). Stating a claim under the Illinois Wrongful Death Act requires a plaintiff to plead that the "(1) defendant owed a duty to decedent; (2) defendant breached that duty; (3) the breach of duty proximately caused decedent's death;" and (4) "pecuniary damages arising therefrom to persons designated under the Act." *Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006) (quoting *Leavitt v. Farwell Tower Ltd. P'ship*, 625 N.E.2d 48, 52 (Ill. App. Ct. 1993)). Thus, both causes of action require establishing proximate causation—the subject of Defendants' challenge.

The general rule in negligence and wrongful-death actions, is that the decedent's "voluntary act of suicide is an independent intervening act which is unforeseeable as a matter of law, and which breaks the chain of causation from the tortfeasor's negligent conduct." *Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1123–24 (Ill. 2015). The rule applies, "provided the defendant was under no duty to decedent to prevent the suicide." *Id.* at 1124. Because "suicide may result from a complex combination of psychological, psychiatric, chemical, emotional, and environmental factors . . . it is the rare case in which the decedent's suicide would not break the chain of causation." *Id.* at 1128. Nonetheless, "where a plaintiff can show that the suicide was a reasonably foreseeable result of the defendant's conduct, liability will attach." *Stanphill v. Ortberg*,

arguments under §§ 6-105 and 6-106. (Dkt. 144 at 8–10). Defendants' argument for immunity under §§ 6-107 and 6-109, however, remain underdeveloped. Thus, Defendants have not met their burden in establishing immunity under these sections.

129 N.E.3d 1167, 1177 (Ill. 2018). A "key factor" in assessing proximate causation, therefore, is "whether it is reasonably foreseeable that a person is at risk of suicide." *Id.*

Cullum alleges Taylor arrived at CCDOC with a record from the CPD suggesting he had "serious mental problems" and may not have been taking medication prescribed for schizophrenia. (Dkt. 114 ¶¶ 19–20). In detention, Taylor's behavior was erratic and included urinating and defecating on himself. (*Id.* at ¶¶ 15–16). Other detainees reported his behavior to Defendants, requesting that Taylor receive medical help. (*Id.* at ¶¶ 18, 26). Yet, Defendants did not help him receive medical treatment. (*Id.* at ¶¶ 120, 124, 128).

These allegations do not permit a plausible inference that Taylor's suicide was reasonably foreseeable. *See Stanphil*, 129 N.E.3d at 1177. Taylor's behavior—although strange and indicative of mental illness—did not suggest that he might commit suicide. *See Alcorn v. City of Chicago*, 2022 WL 4483834, at *9–10 (N.D. Ill. Sept. 27, 2022). Although Cullum has alleged that other detainees expressed concern about Taylor's mental condition, her allegations do not suggest that a reasonable person who observed Taylor would have been concerned that he might take his own life. *Cf. Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000) ("[S]trange behavior alone, without indications that the behavior has a substantial likelihood of taking a suicidal turn, is not sufficient to impute subjective knowledge of a high suicide risk to jail personnel.").

Cullum's reliance on *Hankins v. Alpha Kappa Alpha Sorority, Inc.*, is misplaced. 447 F. Supp. 3d 672, 682 (N.D. Ill. 2020). There, the plaintiff alleged that the decedent had told the defendants that their "hazing was triggering her mental-health issues" and "that she had a *plan* to commit suicide." *Id.* at 683. Those allegations, the district court found, were sufficient to suggest that the decedent's suicide was reasonably foreseeable, although it was a "close[] call." *Id.* (citing

15

*Doe v. Doe*, 67 N.E.3d 520, 626 (Ill. App. Ct. 2016)). Here, by contrast, Taylor's behavior did not suggest any explicit risk of suicide; nor did his record of mental illness indicate that he had any suicidal tendencies. Moreover, due to Defendants' immunity under the Tort Immunity Act, Cullum can only lean on Defendants' failure to provide medical treatment as the purported cause of Taylor's suicide. Notwithstanding Taylor's strange conduct and mental-health history, the causal link between the alleged failure to treat and Taylor's suicide is not plausible. Without such a causal link, Cullum's negligence and wrongful-death claims fail.

## III.   Conspiracy (Counts X–XII)

The parties agree that Cullum's conspiracy claim cannot survive on its own. (Dkt 124 at 13; Dkt. 136 at 8); *see, e.g.*, *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 846 (N.D. Ill. Feb. 5, 2015) ("[C]onspiracy is not an independent tort: the conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails." (quoting *Coghlan v. Beck*, 984 N.E.2d 132, 151 (Ill. App. Ct. 2013))). Thus, Cullum's conspiracy claim fails too.

## IV.   Leave to Amend

### A.   Leave to Add New Parties

The Court next addresses Cullum's motion for leave to file a fifth amended complaint adding ten new defendants—nine named and one Doe officer. (Dkt. 119). Opposing the amendment, Defendants argue that: (1) Cullum has failed to comply with Rule 15(a)(2) by not attaching the proposed fifth amended complaint; (2) the factors set out in *Foman v. Davis*, 371 U.S. 178 (1962), weigh against permitting the amendment; (3) Cullum has not shown good cause to amend past the Court's scheduling-order deadline pursuant to Rule 16(b)(4); and (4) equitable tolling does not excuse the expiration of the statute of limitations. (Dkt. 134). Cullum concedes the first three arguments by failing to address them. (*See* Dkt. 140). *See Bradley*, 59 F.4th at 897;

16

*see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Presumably, Cullum focuses on equitable tolling because Judge Feinerman's oral ruling on the motion for leave to file a fourth amended complaint suggested that equitable tolling might present a viable path around the statute of limitations. (*See* Dkt. 130-8 at 5–6, 9–10). If her new claims are untimely, the amendment is futile. *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) (citing *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007)).

When Judge Feinerman denied Cullum leave to add the ten unnamed correctional officers as new defendants, he explained that Cullum's claims against the officers could not relate back. (Dkt. 130-8 at 5–6).[13] Under Rule 15(c)(1)(C), an amendment that "changes the party or the naming of the party against whom a claim is asserted" relates back if the new (or newly named) party "received such notice of the action that it will not be prejudiced in defending on the merits," and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C); *Herrera*, 8 F.4th at 496. The relation-back doctrine permits "only two inquiries":

> first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself.

*Joseph*, 638 F.3d at 560; *accord Krupski v. Costa Crocier S.p.A.*, 560 U.S. 538, 548 (2010); *see also Rodriguez v. McCloughen*, 49 F.4th 1120, 1123 (7th Cir. 2022) ("[T]he operation of Rule 15(c)(1)(C) principally depends on what the putative defendant knew or should have known.").

---

[13] Although courts commonly "deny leave to amend based wholly or partially on [the] belief that any amendment would not relate back," the procedure is "slightly irregular." *Joseph*, 638 F.3d at 559 (quotation omitted). The proper approach is to grant leave to amend before assessing the statute of limitations and relation back. *Id.* at 558–59. Nonetheless, denying leave to amend is appropriate where the proposed amendment is time-barred, and therefore, futile. *See Zimmerman*, 25 F.4th at 494.

Judge Feinerman relied on the Seventh Circuit's decision in *Herrera v. Cleveland*, which made clear that "naming a John Doe defendant does not constitute a 'mistake' within the meaning of Rule 15(c)(1)(C)(ii)." *Herrera*, 8 F.4th at 498; (Dkt. 130-8 at 5). The application of *Herrera* was straightforward: Cullum could not choose to sue ten Doe correctional officers and later substitute named officers by invoking Rule 15(c)(1)(C)'s "mistake" prong. *See id.* at 499. That would be a choice, not a "mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C)(ii). Now, in seeking to add nine correctional officers by name and one Doe officer, Cullum does not attempt to rehash relation back. (Dkt. 119 at 1–2). Since Cullum focuses on equitable tolling, the Court starts there.

Equitable tolling stops the clock on the statute of limitations when a litigant demonstrates: (1) "diligence in the pursuit of her rights," and (2) "an extraordinary circumstance that nonetheless stood in the way of her making a timely filing." *Madison v. U.S. Dep't of Lab.*, 924 F.3d 941, 946–47 (7th Cir. 2019) (citing *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016)); *see also Herrera*, 8 F.4th at 499 ("[E]quitable tolling is rare."). Where a litigant successfully invokes equitable tolling, the clock is tolled only for the time during which the litigant diligently pursued her rights despite extraordinary circumstances preventing timely filing. *Madison*, 924 F.3d at 947 (citing *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015)). Cullum has not carried her burden.

Initially, Cullum has not shown diligence in attempting to learn the identities of the ten correctional officers she now seeks to add as defendants. On April 16, 2021, Defendants produced surveillance videos from the prison, including footage of the ten correctional officers. (Dkt. 119 at 2; Dkt. 134 at 4). Although Cullum accuses Defendants of deliberately withholding additional surveillance videos, Cullum admits that the ten correctional officers appeared in the video footage

she received on April 16, 2021. (Dkt. 119 at 3). So a lack of access to additional videos did not prevent Cullum from making diligent efforts to access the videos or seek the identities of the correctional officers.

Cullum asserts her counsel attempted to access the video footage on May 20, 2021. (Dkt. 119 at 2). Although Cullum's counsel encountered technical difficulties, counsel "continuously attempted to gain access to the videos until January 25, 2022." (*Id.*) On that day—nine months after receiving the videos, eight months after first attempting to access the videos, and four months after Defendants' counsel filed appearances—Cullum's counsel emailed Defendants' counsel requesting help to open the files. (*Id.*; Dkt. 119-2 at 15; Dkt. 134 at 5; *see also* Dkt. 45). This delay does not suggest diligence on Cullum's part.

Defendants' counsel's paralegal sent Cullum's counsel instructions to view the videos on February 16, 2022. (Dkt. 119-4 at 1).[14] Five days later, Cullum's counsel acknowledged having the ability to view the videos. (Dkt. 119-4 at 7). Cullum moved to compel additional videos and documents on March 15, 2022, but her motion did not mention the ten correctional officers. (Dkt. 72). Cullum argues that Defendants were obligated to name the ten correctional officers by April 15, 2022, when Cullum renewed her motion to compel Defendants' production of additional surveillance videos. (Dkt. 140 at 3; Dkt. 79). The renewed motion to compel stated: "Plaintiff needs to have the Defendant identify . . . six officers" who appeared in the video footage. (Dkt. 79 at 4). Yet, Cullum did not ask Defendants for the identities of the ten correctional officers who appear in the video footage until September 28, 2022—seventeen months after Cullum received the footage, seven months after being able to watch the videos, and one day before the statute of limitations expired. (Dkt. 134 at 6; Dkt. 105 at 5); *see, e.g.*, *Dorsey v. Varga*, 55 F.4th 1094, 1101

---

[14] Defendants assert that the instructions were accessible through a Google search. (Dkt. 134 at 5).

n.3 (7th Cir. 2022) (noting the two-year statute of limitations for § 1983 claims in Illinois).[15] Cullum's sluggish efforts to identify the ten correctional officers were anything but diligent.

Nor has Cullum shown an extraordinary circumstance. The equitable-tolling test's second prong "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [her] control." *Menominee*, 577 U.S. at 257. Cullum's slow-going efforts to access the videos depicting the correctional officers and then to request the officers' names from Defendants do not reflect a circumstance beyond her control. Rather, much of the delay seems attributable to Cullum's inaction. Although Cullum accuses Defendants of deliberately withholding the officers' names, (Dkt. 119 at 3; Dkt. 140 at 6), this accusation finds no support in the record. Since Cullum has not shown her entitlement to equitable tolling, her claims against the additional officers are untimely.

Notwithstanding Cullum's decision to neglect Rules 15(a)(2) and 16(b)(4), those Rules govern leave to amend. *See Joseph*, 638 F.3d at 558; *Cage v. Harper*, 42 F.4th 734, 743 (7th Cir. 2022). They counsel against permitting amendment here. After the time for amendment as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court "may deny leave to amend" under Rule 15(a)(2) "where there is good reason to do so," including "futility, undue delay, prejudice, or bad faith." *L. Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1133 (7th Cir. 2022) (quoting *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 946 (7th Cir. 2020); *see also Foman*, 371 U.S. at 182. Under Rule 16(b)(4), modifying the scheduling-order deadline for amended pleadings requires an additional

---

[15] The Court stayed discovery on April 22, 2022, after it became clear that Cullum had not been appointed as the administrator of Taylor's estate. (Dkts. 79, 82). Cullum moved to vacate the stay over one year later, after she had become the administrator of Taylor's estate. (Dkt. 95). Cullum's delay in becoming a proper party does not reflect diligent pursuit of this litigation.

showing of "good cause." Fed. R. Civ. P. 16(b)(4); *Cage*, 42 F.4th at 743 (explaining that courts may "apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011))).

"In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Cage*, 42 F.4th at 743 (quoting *Alioto*, 651 F.3d at 719). As explained, Cullum has not been diligent in seeking the identities of the ten additional correctional officers. Neither has she been diligent in seeking leave to amend the scheduling order. Cullum waited until the day before the deadline for motions to amend pleadings or add new parties to request an extension. She has not explained the delay. Turning to Rule 15(a)(2), Cullum has failed to file a proposed fifth amended complaint or explain what claims she intends to raise against the additional officers. This dearth of explanation also suggests "a lack of diligence and good faith." *See L. Offs. of David Freydin*, 24 F.4th at 1133–34 (quotation omitted). Whatever new claims Cullum seeks to bring, her claims against the additional officers are untimely, so the amendment would be futile. *See Zimmerman*, 25 F.4th at 494. Accordingly, Cullum's motion for leave to file a fifth amended complaint is denied. (Dkt. 119).

### B.     Leave to Replead State-Law Claims

Finally, Cullum seeks leave to replead her state-law claims. (Dkt. 136 at 8).[16] District courts have "broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 667 (7th Cir.

---

[16] Opposing Defendants' motion to dismiss, Cullum has requested "leave to file a Fourth Amended Complaint." (*Id.*) Cullum has already filed a Fourth Amended Complaint, so the Court construes this request, in context, as a request for leave to replead the deficient state-law claims.

2022) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)); Fed. R. Civ. P. 15(a)(2). Although a plaintiff should ordinarily receive an opportunity "to amend if she had no earlier chance to remedy the relevant deficiency," leave to amend is properly denied if "the plaintiff cannot explain how any revisions might address the deficiencies." *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 699 (7th Cir. 2018) (citing *Doermer v. Callen*, 847 F.3d 522, 528 (7th Cir. 2017)).

Here, Cullum has not explained how a fifth amended complaint would fix the deficiencies in her state-law claims. *See id.* Since this case began more than two years ago, undue delay is also a concern. Presumably, Cullum or Palmer could have raised these claims in any of the first three complaints. Cullum offers no reason for the omission. As discussed with respect to Cullum's motion to add new defendants in a fifth amended complaint, various missteps by Cullum's counsel have slowed this case to a crawl. It is past time for this action to move forward. Since Cullum has not explained how she can cure her state-law claims' defects or why she raised these claims so late, the Court sees no justification for further delay. *See, e.g.*, *Huon v. Denton*, 841 F.3d 733, 745–46 (7th Cir. 2016) (affirming denial of leave to file a fifth amended complaint where the plaintiff "had ample opportunity to plead his claims, and justice [did] not require an additional bite of the apple"). Cullum's lack of diligence in pursuing her state-law claims also prevents her from demonstrating good cause under Rule 16(b)(4). *See Cage*, 42 F.4th at 743. The Court therefore denies leave to replead the state-law claims. Having denied leave to file a fifth amended complaint, pushing the scheduling-order deadline is unnecessary.

## **CONCLUSION**

For the reasons above, Defendants' partial motion to dismiss [122] is granted. Counts IV–XII are dismissed with prejudice for failure to state a claim. Cullum's motions for leave to file a fifth amended complaint [119] and to amend the Court's scheduling order [162] are denied.

Virginia M. Kendall
United States District Judge

Date: June 2, 2023